[Civ. No. 10198.    Second Appellate District, Division Two.—April 30, 1936.]

FRED J. FREDERICK, Appellant, v. FEDERAL LIFE INSURANCE COMPANY (a Corporation), Respondent.

W. I. Gilbert and Burton Briggs Crane for Appellant.

Joe Crider, Jr., and John J. Ford for Respondent.

WOOD, J.—Plaintiff sought to recover judgment under the provisions of an accident and health insurance policy issued to him by defendant on October 19, 1928. In its answer defendant denied liability upon the ground that certain answers and statements made by plaintiff in his. application for the policy were false. Defendant filed a cross-complaint for rescission of the contract of insurance based upon the facts which it set up as a defense to the complaint. A trial by jury resulted in a verdict and judgment for defendant and the trial court rendered judgment for defendant on the cross-complaint. Plaintiff appeals from both judgments.

Plaintiff contends that defendant is estopped from denying liability and from canceling the policy for the reason that, as alleged, the defendant waived the misrepresentations pleaded in the answer when it issued the policy with knowledge that plaintiff had failed to set forth in his application certain matters mentioned in the report of the medical examiner. In the application for the policy plaintiff answered a number of questions propounded to him. In question (4) he was asked whether he had "ever had any of the following complaints, symptoms, or diseases" followed by an enumeration of about forty complaints or diseases. To this question he answered "no" in each instance. The next three questions and answers appear in the application as follows: "Question—(5) Have you within ten years consulted or been treated by a physician or any other practi-

tioner for any ailment or disease not included above? (If so, give dates and full particulars.) Answer—Influenza 1918. No complic or sequelae. Fever, which he thinks was malaria, once or twice about ten years ago. Mild attacks. In bed a few days. Question—(6) Have you ever had any serious illness? Answer—None only as above stated. Question—(7) Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution? (If so, give details.) Answer—No." Plaintiff also answered "none" to the following question: "Have you ever had or have you now any bodily or mental infirmity or deformity (including hernia and rupture) or have you impaired hearing, any disease of either eye, lost a limb or the sight of an eye, or are you in any respect maimed or in unsound condition mentally or physically? (Give particulars.)" In the report of the medical examiner for the company the following appears: "I certify that I have this day carefully examined Fred Jack Frederick (applicant's Full Name) of Los Angeles, California in private, and that the applicant's answers are in my own handwriting. Four years ago he was offered a few drinks of liquor and developed thereafter pains in the back for which he consulted a Dr. C. H. Woods, West 16th St., Los Angeles, a chiropractor who treated him with some form of lights for a few weeks—applicant not confined to home. Complete uneventful recovery." Plaintiff points out that no mention was made in the application of the treatment by Dr. Woods for "pains in the back" and he now argues that the defendant corporation having received this information in the medical examiner's report and having chosen to issue the policy, cannot deny liability by reason of the false statements relied upon by defendant to defeat recovery on the policy, statements which bore no relation whatever to the item reported by the medical examiner. The false statements claimed by defendant to have been made by plaintiff are set forth in its answer as follows: "That during a period beginning at least ten (10) years prior to the giving of said answers, and particularly during all of the year 1927, and from the first day of January, 1928, up until a very short time before said policy was executed, said Frederick was, and continuously had been, suffering from gonorrhea and from nephritis and from urethral discharges and

from a severe discharge of a gonorrheal nature from his eyes and from severely inflamed and swollen joints, particularly in the ankles and in the hip joints and knees and groin, from arthritis, urethritis, and from conjunctivitis, all brought on by sexual exposure. That during said period of time said Frederick was treated for said ailments and diseases by at least three physicians and surgeons, and that, during the year 1927, said Frederick was, for a long period of time, confined to a hospital for the treatment of said diseases, and was, for a long period of time during the year 1927, and the first six months of the year 1928, permanently disabled by said diseases.''

Defendant contends that ''an analysis of the statement made to the medical examiner shows that it was one calculated to allay suspicion rather than to excite suspicion and was in entire harmony with the application''; also that the medical examiner's report was not properly before the trial court. We need not pass upon these questions for it is clear that plaintiff's contention cannot be sustained. Plaintiff must have given the information contained in the medical examiner's report at the same time that the questions contained in the application were answered. His disclosure to the medical examiner negatives the charge of fraud in the particular referred to and is sufficient to refute the charge that defendant had knowledge that plaintiff was making false representations. Even if it be considered that defendant, upon receipt of the medical examiner's report, had knowledge that, as regards the treatment by Dr. Woods, plaintiff had not fully answered the questions in the application, it does not follow that defendant cannot resist recovery on the policy on account of other and serious representations which defendant thereafter learned to be false. The application and report of the medical examiner were forwarded to company headquarters where the officials of defendant company decided whether they cared to issue the policy. It was their right to reject the application if upon the information before them they desired to do so. The fact that they might have overlooked or considered as inconsequential an incorrect or incomplete answer contained in the application does not prevent their defense against fraudulent statements, the falsity of which was discovered after the issuance of the policy. The defendant had no knowledge at the time the

policy was issued of the misrepresentations now relied upon to defeat recovery. In *Maggini* v. *West Coast Life Ins. Co.*, 136 Cal. App. 472 [29 Pac. (2d) 263], it is stated: "But the evidence is clear that the appellant did not have any knowledge of the falsity of any of these misrepresentations except that relating to the illness of the insured five years prior to the date of the policies. This may have been sufficient to raise a suspicion as to the truth of other representations relied on; but cause for suspicion does not constitute knowledge. Hence there could be no estoppel of the insurer's right to 'set up the fraud by way of defense to an action brought to enforce the apparent liability'." By referring to the language just quoted we do not mean to say that defendant had sufficient knowledge "to raise a suspicion as to the truth of other representations relied on".

Witnesses testified on behalf of defendant that plaintiff, while a hospital patient in 1930, had made statements to them in which he described his physical condition before the issuance of the policy. Only one inference could reasonably be drawn by the jury from these statements, the inference that plaintiff was in the hospital for treatment for an aggravated case of gonorrhea. Upon rebuttal plaintiff was asked: "Have you at any time in your life had a disease commonly known as gonorrhea?" The court's ruling sustaining defendant's objection was erroneous and of such a nature as to call for reversal of the judgments. Defendant attempts to justify the ruling by arguing that the question could be answered only by an expert. It is apparent that defendant takes the position that it may require plaintiff in his application for a policy to answer the question whether he has had a certain disease; that after his answering such a question negatively in the application defendant may present to the jury evidence to show that he in fact did have that disease and thereafter deny plaintiff the privilege of testifying that he had not in fact suffered from such disease. The position taken by the defendant at the time the application was received is not consistent with the position taken in court. Moreover, it has been held that the precise question may be asked of a party litigant even though he is not an expert. In *North Elk Oil Co.* v. *Industrial Acc. Com.*, 81 Cal. App. 582 [254 Pac. 582], the court said: "Walters testified that he had never been ill in his life.

He said, specifically, that he had never had a venereal disease of any kind. This is the lay evidence to which petitioners refer, as stated above, as not being proper for consideration in opposition to the testimony of the experts. The testimony given by Walters was not upon a subject which is for experts alone (22 C. J. 618). Without the citation of authority, it would seem that a witness may testify whether he has had a particular disease as a matter of fact known to himself, and not as a matter of opinion." In *Kinner* v. *Boyd*, 139 Iowa, 14 [116 N. W. 1044], it was held that plaintiff, a layman, was competent to testify that he had suffered a broken breastbone. In *Ferguson* v. *Davis County*, 57 Iowa, 601 [10 N. W. 906], it was held that plaintiff, although not an expert, could testify that his ribs had been fractured. In *Dolan* v. *Moberly*, 17 Mo. App. 436, it is stated: "There was no error in admitting that portion of plaintiff's testimony in which she stated that she had two abscesses and falling of the womb." In view of the allegations contained in the answer and the evidence presented by defendant, it is obvious that plaintiff was prejudiced by the ruling of the court by which he was denied the right to testify concerning whether he had previously suffered from gonorrhea. It is difficult to see how plaintiff could refute the charge except by his own testimony. It is entirely probable that the verdict was returned because the jury believed plaintiff had been afflicted with this disease.

A question has been argued in the briefs which will probably arise upon a retrial of the issues and we deem it appropriate to pass upon this question for the guidance of the trial court. Two witnesses testified that in August, 1930, plaintiff was a patient in hospitals in which they were employed as internes. One of the internes was a graduate physician and the other a senior medical student. One of these witnesses, Dr. J. H. Marcus, testified that he took the history of plaintiff for the purposes of the hospital records in accordance with a rule of the hospital and not for the purpose of treatment. Dr. Marcus was employed by the hospital and was not under the supervision of the private physician who did in fact treat plaintiff. Dr. Marcus had no personal recollection of the statements made by plaintiff but de- -pended on the hospital records to refresh his memory. The testimony of Dr. Marcus was presented for the purpose of

impeaching the testimony of plaintiff. Dr. Marcus related certain statements made by plaintiff when his history was taken concerning his previous physical condition. The testimony of the other interne was similar to that of Dr. Marcus.

Counsel for plaintiff now argues that the testimony of the two internes was privileged and therefore inadmissible. It is provided in section 1881, subdivision 4, of the Code of Civil Procedure: "A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." At common law communications between physician and patient were not privileged and we must look to the statute to determine the extent of the privilege which has been provided. The internes did not give their testimony from "information acquired in attending the patient". Nor was the information necessary to enable them "to prescribe or act for the patient". The internes did not prescribe or act for the patient. The court did not err in admitting their testimony.

The judgments are reversed.

Crail, P. J., and McComb, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1936.