GATES et al. v. GENERAL CASUALTY
CO. OF AMERICA.

No. 9707.

Circuit Court of Appeals, Ninth Circuit.

June 5, 1941.

926

David E. Peckinpah, Harold M. Child, and L. N. Barber, all of Fresno, Cal., for appellants.

Redman, Alexander & Bacon, Jewel Alexander, and W. C. Bacon, all of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment that the appellee insurance company, hereafter called insurer, justifiably had cancelled an insurance policy insuring the R. O. Deacon Lumber Company, a corporation, hereafter called insured, against liability to other persons from injury from the operation of insured's fleet of lumber trucks, trailers and automobiles operating over a wide area of California. Appellants, widow and children of Elmer Gates, had recovered judgment against the insured for his killing by lumber falling from insured's truck. They sued the insurer for the amount of insured's judgment liability. This appeal followed the judgment below denying them recovery.

■ The policy was issued, the loss occurred, and the claim made on the insurer in the State of California. Hence the insurance laws of California and the Cali-

fornia decisions determine the insured's right of recovery.

The district court found that the insured corporation fraudulently misrepresented at the time it sought to obtain the policy, the fact that "for a period of time prior to the issuance of defendant's policy" insured "was insured with the Metropolitan Casualty Company and during said time several serious liability claims for personal injuries and a number of property damage claims were made against said R. O. Deacon Lumber Company resulting in substantial losses to said Metropolitan Casualty Company," and that "had said information been furnished defendant in response to its specific inquiry prior to the issuance of said policy, defendant would not have issued or delivered said policy," and concluded that the insurer had justifiably rescinded the policy and was not liable for the claim for the killing of Elmer Gates.

■■ There is ample evidence to sustain the finding that the insured corporation so had been insured in the Metropolitan Casualty Company and had the unsatisfactory experience as to frequency of claims found by the court. It is obvious that these facts are "material to the contract" sought to be procured by the insured corporation from the insurer. Strangio v. Consolidated Indemnity & Ins. Co., 9 Cir., 66 F.2d 330, 336. The following provisions of the California Insurance Code, St.Cal. 1935, p. 505, require their disclosure to the insurer prior to making its insurance policy:

"§ 330. Definition. Neglect to communicate that which a party knows, and ought to communicate, is concealment.

"§ 331. Effect. Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

"§ 332. Required disclosures. Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.

\* \* \* \* \* \*

"§ 334. Materiality of fact concealed, determination. Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

Construing these code provisions (formerly in the Civil Code) we have held that the failure to disclose one recent accident to an automobile of the applicant for such insurance warranted a cancellation of the policy. Strangio v. Consolidated Indemnity & Ins. Co., supra. In so interpreting these code provisions we held them to embody the principle stated by Mr. Justice Stone in Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 316–318, 48 S.Ct. 512, 513, 72 L.Ed. 895, "Insurance policies are traditionally contracts uberrimæ fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. [Cases cited] \* \* \*."

■ With regard to the court's finding that the concealment was "fraudulently" made, we regard it as surplusage, for under the California law "\* \* \* a concealment of fact whether intentional or unintentional, which is material to the risk vitiates the policy. The presence of an intent to deceive is not essential." Telford v. New York Life Ins. Co., 9 Cal.2d 103, 105, 69 P. 2d 835, 837.

This court applied the same rule in Strangio v. Consolidated Indemnity & Ins. Co., supra, 66 F.2d 336, where it said: "Under the California statute, quoted above, the failure to disclose to the insurer that an accident had happened authorized the cancellation of the policy, notwithstanding the fact that Strangio Bros. were not guilty of any intentional wrong in not making the disclosure to the insurance company before the policy was issued."

■ Appellants contend that the court's finding of misrepresentation and concealment is not sustained by the evidence. On this issue appellants must show the court's findings are "clearly erroneous" due regard being "given to the opportunity of the trial court to judge of the credibility of the witnesses,"[1] all but one of whom was heard by that court.

The insured procured the policy through the solicitation of a broker, who, it is agreed, was the insured's agent. Concerning an interview with this broker, the insurer's chief underwriter, who worked out the details of handling of the risk, testifies:

"\* \* \* And I told him at that time that we would have to have the names of the

---

[1] Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

previous carriers and the experience for three or four years in order to judge whether or not we could accept the risk or not. I told him that if the experience were good for that period of time we would give it very favorable consideration. I happen to remember that I said three or four years because that is one of the fundamentals of underwriting that business, and I always insist on at least that much information, for that much experience on a risk of that nature because one year won't give you the experience on it. * * *."

In reply to this inquiry concerning the insured's experience over the three or four years and of its carrier during that period, the broker furnished the chief underwriter a letter to the broker from the insured corporation. This letter, given to the insurer in response to its request for insured's prior three-year experience, gave the experience of but a single year, though not stating it was for the shorter period. Whether this was an intentional misrepresentation or due to a misunderstanding between the broker and his insured principal is a matter of indifference so far as concerns the effect of a concealment or false representation of a matter material to the risk. Telford v. New York Life Ins. Co., supra.

The letter contained other misrepresentations. It described the applicant's experience as involving a single accident—the destruction of a truck and a claim for its loss, —whereas there is viva voce evidence from which the district court properly could infer that there had been five property damage claims and several personal injury claims in 1933, the last of the three years about which the insurer had made its inquiry. There was similar evidence that in 1932 there had been four cases of accidents to the insured's trucks, some including personal injuries. The information suppressed would have disclosed a very different kind of risk from that disclosed. Here, certainly, was not the uberrima fides of Strangio v. Consolidated Indemnity Ins. Co., supra.

The letter also misrepresented that the insurance at the time of the truck loss had been with Maryland Casualty Company, instead of the Metropolitan Casualty Company, stating that the Maryland Company had withdrawn its coverage because the single claim arising from the destruction of the truck cost them too much. Quite likely the misrepresentation was due to a typographical confusion of the two casualty companies, whose first names commenced with the letter M, but, as seen, the fact that the mistake was unintentional is immaterial.

The insurer inquired of the Maryland Casualty Company and discovered that there had been but a single claim made on it and that for but $53, and it may be assumed that insurer discovered the error in the name. The insurer made no further inquiry but, relying on the statement that there had been but one truck and the one other $53 claim in three years, issued the policy.

Appellants claim that the insurer is estopped to rely on the concealment, indeed here misrepresentation, as to the numerous accidents in the previous three years, because if it had pursued its inquiries after the discovery of the error as to the name of the casualty carrier at the time of the truck loss, it would have discovered the falsity of the representation of the single accident for which the coverage had been withdrawn.

■ With this we cannot agree. No burden was thrown on the insurer to doubt the truthfulness of the main assurance to the insurer of the remarkably favorable experience of three years in a far-flung trucking enterprise, because of a mistake which we have assumed was discovered in naming the insurance carrier during the period in which a recited truck loss occurred. It ill becomes a suitor to assert that because a presumably innocent mistake in name is discovered by an insurer, the insurer shall then proceed on the theory that all the representations made to it are purposely false, and be estopped to assert the deceit which would have been disclosed by an investigator proceeding on the assumption of dishonesty in the insured. Frederick v. Federal Life Ins. Co., 13 Cal.App.2d 585, 57 P.2d 235; Rutherford v. Rideout Bank, 11 Cal. 2d 479, 485, 80 P.2d 978, 117 A.L.R. 383; Willson v. Municipal Bond Co., 7 Cal.2d 144, 151, 59 P.2d 974; Victor Oil Co. v. Drum, 184 Cal. 226, 241, 193 P. 243; Teague v. Hall, 171 Cal. 668, 154 P. 851.

To show the California law appellants rely on a district court of appeal case, Turner v. Redwood Mutual Life Ass'n, 13 Cal. App.2d 573, 57 P.2d 222. In that case the insurer's inquiries were in a questionnaire answered by the insured (later deceased). One question was, "From what illnesses have you suffered during the last three years? A. Droppage of bladder .(fully recovered)." The insured had had a dis-

eased organ near the bladder and the court held that here was a substantial disclosure sufficient to put the insured on inquiry of an illness in that region.

Another question was, "Have you ever had *an* operation? A. Operation for small rupture in 1921." (Emphasis supplied). Here the inquiry was only whether insured ever had *"an"* operation, not how many, and here the answer was truthful. We take this California case to hold that if there be specific inquiries concerning health affecting the risk, it is sufficient if these be substantially answered, and no further disclosures are required. However, in the case at bar the specific question as to the three-year experience was not answered by a statement substantially true. It was untruthfully answered in such a way as to persuade the insurer the risk was an exceptionally good one, whereas the applying corporation had had a very bad experience.

■ In Frederick v. Federal Life Ins. Co., 13 Cal.App.2d 585, 588, 57 P.2d 235, a case decided just after Turner v. Redwood Mutual Life Ass'n., supra, the exact question here presented was decided. There the applicant for life insurance made a statement concerning his health of which the insurer had information from which it might be inferred that it was not a full answer. There were other matters material to the risk which were false, but of which the insurer had no knowledge of their falsity. The district court of appeal held (13 Cal.App.2d pages 588, 589, 57 P.2d at page 237):

"* * * Even if it be considered that defendant, upon receipt of the medical examiner's report, had knowledge that, as regards the treatment by Dr. Woods, plaintiff had not fully answered the questions in the application, it does not follow that defendant cannot resist recovery on the policy on account of other and serious representations which defendant thereafter learned to be false. The application and report of the medical examiner were forwarded to company headquarters where the officials of defendant company decided whether they cared to issue the policy. It was their right to reject the application if upon the information before them they desired to do so. The fact that they might have overlooked or considered as inconsequential an incorrect or incomplete answer contained in the application does not prevent their defense against fraudulent statements, the falsity of which was discovered after the issuance of the policy. The defendant had no knowledge at the time the policy was issued of the misrepresentations now relied upon to defeat recovery. In Maggini v. West Coast Life Ins. Co., 136 Cal.App. 472, 29 P.(2d) 263, 266, it is stated: 'But the evidence is clear that the appellant did not have any knowledge of the falsity of any of these misrepresentations except that relating to the illness of the insured five years prior to the date of the policies. This may have been sufficient to raise a suspicion as to the truth of other representations relied on; but cause for suspicion does not constitute knowledge. Hence there could be no estoppel of the insurer's right to "set up the fraud by way of defense to an action brought to enforce the apparent liability." ' By referring to the language just quoted we do not mean to say that defendant had sufficient knowledge 'to raise a suspicion as to the truth of other representations relied on.' "

Appellants also cite E. A. Boyd Co. v. United States Fidelity & Guaranty Company, 35 Cal.App.2d 171, 94 P.2d 1046. In that case the insurance company had ample knowledge of a prior defalcation of a bonded employee and was estopped to set up that the insured had concealed the fact. We can see no parallel between that case and the concealment here, amounting to positive misrepresentation, concerning the previous three-year experience of the trucking company. We cannot regard it as overruling Frederick v. Federal Life Ins. Co., supra, or the other California cases cited above.

■ We have considered the appellants' contentions on the assumption that the only inference from the evidence is that the insurer was not put on its guard to make further inquiry to discover that there had been a concealment or a misrepresentation concerning the unfavorable three-year experience of the applicant for insurance. However, in California, where the evidence on such a contention is conflicting and the trial court may make inferences from it favoring either party, the appellate court will not assume to retry the case. West v. Great Western Power Co., 36 Cal.App.2d 403, 407, 97 P.2d 1014. Under Rule 52(a) of the Federal Rules of Civil Procedure we have a broader power of review than in California, and we hold that the district court's finding of concealment and its holding that the policy was vitiated and properly rescinded is not "clearly erroneous." While not necessary to this decision, it

930

appears to us the court was clearly right in its judgment denying recovery to appellants.