Filed 2/14/23  Marriage of Ortega CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| In re the Marriage of JANET and MICHAEL ORTEGA. _____ JANET S. ORTEGA, Respondent, v. MICHAEL G. ORTEGA, Appellant. | B317879 (Los Angeles County Super. Ct. No. BD586480) |

APPEAL from order of the Superior Court of Los Angeles County, Alison M. Mackenzie, Judge.  Affirmed.

Gay Family Law Center and Angelyn Gates for Appellant.

No appearance for Respondent.

————————————

# INTRODUCTION

Appellant Michael G. Ortega moved to set aside an order by the family court granting his ex-wife Janet's request to renew a restraining order issued against him under the Domestic Violence Prevention Act (DVPA). (Fam. Code,[1] § 6200 et seq.) Michael believed he was entitled to set-aside relief under Code of Civil Procedure section 473, subdivision (b). He claimed he was untimely served with Janet's moving pleadings and notice of the hearing and the court no longer had jurisdiction to issue a renewed domestic violence restraining order (DVRO). He requested, in the alternative, that the court terminate or modify the renewed DVRO. The trial court denied relief.

On appeal, Michael repeats the same arguments he made before the trial court. He also contends the court "incorrectly set the date of termination" of the renewed DVRO and erred "when it failed to grant [his] request for a hearing on the merits of the Request to Renew the DVRO."

We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this matter. (See *In re Marriage of Ortega* (May 17, 2019, B288265 [nonpub.opn.].) We include relevant information from our prior opinion.

I.      *Background Information*

Michael and Janet married in 1991. During their marriage, they acquired property in Bullhead City, Arizona; their primary residence, however, was in California.

---

[1]      Undesignated statutory references are to the Family Code.

In June 2013, Michael committed an act of domestic violence against Janet, which caused her to suffer a concussion, blurred vision, an injured arm, stitches to her upper lip, and dizziness. The next month, on July 30, 2013, Janet filed a petition for dissolution of her marriage to Michael. Michael filed a response on August 26, 2013.

On November 18, 2014, the trial court granted a DVRO protecting Janet against Michael. The DVRO identified as "additional protected persons" Janet's adult daughter Shelly Montes and roommate Diana Sanchez, along with Diana's 18-month-old child. We have no moving papers or any responsive or reply pleadings filed in connection with Janet's request for a DVRO. It appears the court held a hearing on October 17, 2014, before issuing the DVRO; we have no reporter's transcript of the hearing on the DVRO request.

The DVRO was set to expire in five years, on November 18, 2019. It included the following orders: Michael shall not "[h]arass, attack, strike, threaten, . . . disturb the peace" of Janet and the additional protected persons. Michael shall not "[c]ontact [Janet and the additional protected persons], either directly or indirectly, by any means." Michael was ordered to move out of their property in West Covina, California, and to stay 100 yards from that property, Janet, her workplace, and her car. Janet was also awarded the "use, control, and possess[ion]" of the other property located in Bullhead City, Arizona.

In August 2017, Janet filed a request for order (RFO) that the Bullhead City property be sold because Michael had failed to pay the court-ordered equalization payment he owed her and was unlikely to be able to do so unless the property was sold. The court ordered the property sold and ordered Michael to deliver his

3

proceeds from the sale to Janet as credit against the equalization payment he owed her.[2]

II. *Janet's Request to Renew Restraining Order*

On October 11, 2019, Janet filed a request to renew the DVRO that was set to expire in five weeks. She requested the DVRO be renewed for an additional five years or "permanently." In support, she submitted a declaration stating that Michael had violated the DVRO by "consistently harassing" her.

Janet provided multiple examples of the harassment. For example, within one month of the issuance of the DVRO, Michael "caused [her] 2014 Toyota Prius to be shot 9 times" in the driveway of the West Covina property on December 9, 2014.

While she was awarded exclusive use and possession of the Bullhead City property, Michael "not only trespassed on the property" but also "caused damage to it." Michael removed her name from the Bullhead City property's utility companies' billing and authorized the shut-off of the utilities without her permission. Several times the "locks to the house had all been glued shut," requiring her to hire a locksmith to "re-key the entire property."

On September 18, 2017, Janet noticed a "strange red Ford Ranger pick-up truck" parked inside the gated driveway to the Bullhead City property, parked to block entry through the backdoor of the property. Janet was "forced to have the vehicle towed" off her property. Janet was not able to gain access to the front door either because the doorknob had been removed and "yet again another hard substance was coating the deadbolt so

---

[2] We affirmed this decision on May 17, 2019. (*In re Marriage of Ortega, supra,* B288265.)

4

[she] was not able to use [her] key." On nine occasions, the locks to the Bullhead City property were changed without her knowledge or permission. Also in 2018, while backing out of the driveway of her new residence in Los Angeles with her daughter Shelly, Janet noticed Michael "loitering in front of [her] house." She saw him cross the street and enter a vehicle—the same red Ford Ranger that was towed from the Bullhead City property.

The "Notice of Hearing to Renew Restraining Order" contains instructions that "[s]omeone 18 or over . . . must personally 'serve' a copy" of the pleadings to Michael "at least 5 days before the hearing." A hearing on Janet's request to renew the DVRO was set for October 31, 2019.

III. *Status Updates on Janet's Service Attempts*

A hearing was held on October 31, 2019. Janet testified she was unable to personally serve Michael with a copy of the DVRO papers. She was unsuccessful because he "goes back and forth between Los Angeles and Arizona, Bullhead City"—where he bought a property "directly across from the property that [she is] trying to sell, and he did not come to the door." She also tried to have him served at his girlfriend's house in Bullhead City but was unsuccessful. The court continued the hearing to January 9, 2020 to provide Janet with time to effectuate service, and reissued the DVRO to remain in effect until then.

On December 6, 2019, the court held a hearing on Janet's order to show cause (OSC) re contempt and her RFO to enforce the order to sell the Bullhead City property. Janet appeared in propria persona; Michael was represented by attorney Michelle Paul (Paul), who works with Michael's counsel Angelyn Gates (Gates). Janet explained to the court that she tried "several ways" to personally serve Michael with both the OSC re contempt

5

papers and the request to renew the DVRO. She informed the court that Gates sent her an e-mail at 8:30 p.m. the night before advising that neither she nor Michael would attend the hearing.

On behalf of Michael, Gates had accepted service of Janet's RFO to enforce the sale of the Bullhead City property. Michael filed a request to continue the hearing on the RFO. His counsel Paul informed the court she is "here to continue the RFO" and neither she nor Gates were Michael's attorney for the contempt matter.

The court denied Michael's request to continue the RFO. The court enforced its prior order to list the Bullhead City house for sale and ordered Janet to prepare and send to Gates a listing agreement within 45 days. The court ordered Michael to sign the listing agreement and execute any documents necessary to open escrow by January 31, 2020; if not, the court ordered the clerk of the court to sign the listing agreement on behalf of Michael. The court further ordered Michael "not to interfere in any way with the showing and sale" of the property, including "placing any locks on the property, damaging the property in any way, or restricting access to the property for prospective buyers [¶] . . . [¶] [and] real estate agents."

At the hearing on January 9, 2020, Janet informed the court she was unable to personally serve the DVRO pleadings on Michael. She filed a declaration attesting to her due diligence in trying to effectuate service. She testified she "paid several people to try to serve" Michael, but he continues "to hide" in the fenced-in property and the process servers are not able to enter the premises. She further testified both Michael and Gates "kn[ew] we're looking for him. We just can't get to him." The court

6

continued the matter to May 8, 2020 to provide Janet further time to serve Michael.

On March 5, 2020, a hearing took place on Michael's RFO to stay the prior order requiring him to sign the listing agreement. Gates appeared in Michael's absence on his behalf; Janet appeared in propria persona. The court denied Michael's RFO for several reasons, including that Michael failed to provide an address verification postjudgment pursuant to section 215.[3]

On May 8, 2020, Janet informed the court she still was unable to personally serve the DVRO pleadings on Michael. She testified his counsel Gates said she "does not have an address for him [and] doesn't know where he's at." Janet testified Michael has been "couch surfing everywhere from California to Arizona," which has made things "difficult." The court instructed Janet to "keep a written record of the things [she's] doing to get him served" and continued the hearing.

On August 20, 2020, Michael filed a "Notice of Change of Address" with the court, indicating that as of that date, his residence and/or mailing address was at the Bullhead City property.

That same date, Gates filed a "Notice of Limited Scope Representation" indicating that she represented Michael "in relation to any matter pertaining to the Judgment of Dissolution

---

[3] Section 215 provides that "after entry of a judgment of dissolution . . . no modification of the judgment or order, and no subsequent order in the proceedings, is valid unless any prior notice otherwise required to be given to a party to the proceeding is served, in the same manner as the notice is otherwise permitted by law to be served, upon the party." (§ 215, subd. (a).) Service upon the attorney of record is not sufficient. (*Ibid.*)

including any requests regarding the disposition of the [Bullhead City property] and/or spousal support."

On November 30, 2020, the court on its own motion advanced and continued the December 4, 2020 DVRO hearing to January 8, 2021, as the court would be dark on December 4. The minute order specified that the "clerk is to give notice" and the clerk's certificate of mailing states notice was mailed on November 30, 2020 to Janet's home address and Michael's counsel's address at the Gay Family Law Center, 777 E. Tahquitz Canyon Way, Palm Springs.

The next day, Janet successfully effectuated personal service of her request to renew the DVRO papers on Michael, with notice of the hearing on December 4, 2020. She filed a proof of personal service signed by process server Adam C. Nicolai, attesting to having personally served Michael at 11:45 a.m. on December 1, 2020 at the Bullhead City property.

IV.    *Hearing on Janet's Request to Renew the DVRO*

On January 8, 2021, the court found service on Michael proper and proceeded with the hearing on Janet's request to renew. Janet appeared in propria persona; Michael did not appear. Janet and her daughter Shelly provided testimony in support.

Janet testified the harassment is "still ongoing" and she gets "threats all the time." Michael threatened to "bankrupt [her], take everything, make sure [she] got nothing." Although the court ordered Michael to cooperate with the listing/sale of the Bullhead City property since 2014, he filed a lis pendens on the property which halted Janet's ability to sell; she is currently in court proceedings in Arizona to lift the lis pendens. Michael also threatened Janet's locksmith and the realtors showing the house

8

and "cut off the lock boxes." He put epoxy on the locks, barricaded the doors, and blocked Janet from entering the property. He also purchased a property that is 20 feet away from the Bullhead City property, in violation of the DVRO, and Janet is "not comfortable being there . . . knowing that he's right across the street." She noticed Michael's girlfriend drive by the Bullhead City property while Janet was staying there. She feels "like a sitting duck like this man is watching me."

She reminded the court of prior incidents where Michael shot at her car and home, as well as "pipe-bombed" her car, for which he went to prison. She recalled an incident when Michael entered the Bullhead City property knowing she was there (her car was visibly parked in the driveway), and she "thought [her] life was over" because he knew he was not supposed to enter and did not care about the consequences. "[N]othing stops him, and all [she can] really count on is the fact that [she] can call the police because there's a restraining order in place."

Shelly testified next. In 2016, she and Janet were forced to move out of their West Covina home and relocate to a new home in Eagle Rock because they "didn't feel safe . . . anywhere cause Michael kept coming by and bombing [their] cars and doing damage." Shelly recalled a more recent incident where Michael showed up at their new home on February 14, 2019 and was "stooping around." Shelly saw him run off across the street as they walked outside the home and into their vehicle. They called 9-1-1 and filed a police report. As for the car-bombing incident, Shelly was home on a Saturday night when "all of a sudden . . . I heard a big bang, and three of our vehicles had all been bombed in [our] driveway."

9

Shelly also testified that during Thanksgiving with Janet in Bullhead City a few years prior, she "heard a bunch of commotion" and the voices of a "couple of men" while she was in the bathroom. She got out to find Michael and a friend of his inside the property. She heard Michael tell his friend "to barricade like one half of the house, and [Michael] and [Janet] were in the other half of the house. So he like separated us." Shelly ran back into the bathroom and called 9-1-1. Within 24 hours after that incident, when Shelly and Janet returned to the Bullhead City property, they saw "chains around the doors, around the gate, so we couldn't come back in." The next day, the electricity was off again; they went outside to discover the electric meter's panel was removed.

Shelly and Janet were then notified by their neighbor at the West Covina property that he saw Michael break into the property and remove "a couple of truckloads" of "stuff" from the house. Shelly and Janet "rushed back from Bullhead [City] as quick as [they] could" and came to find their house "completely ransacked"; "everything was a mess." He had gone "through everybody's stuff" and "took a bunch of stuff that wasn't even his."

The court granted Janet's request to renew the DVRO and ordered it "renewed on the same terms and conditions." The court found that "the protected party has established by a preponderance of the evidence that the restraining order should be renewed." The court further found that "given the initial evidence presented in connection with the initial issuance of the restraining order and the evidence of conduct after the issuance," that Janet "met the requirement of a showing of reasonable apprehension of future abuse." The court ordered a permanent

10

DVRO for a period of five years, set to expire on January 8, 2026. The court ordered Janet to serve Michael with the renewed DVRO "by mail."

V.    *Michael's RFO to Set Aside the DVRO*

On August 11, 2021, a "Notice of Limited Scope Representation" was filed on behalf of Michael. The next day, on August 12, another "Notice of Limited Scope Representation" was filed by Gates. The record does not include either of these two notices, and we are thus unaware what Gates's scope of representation of Michael was during that time period. The case summary also provides that a substitution of attorney was filed by Michael on August 12, 2021, substituting Chelsea Norris (Norris) as counsel.

On August 12, 2021, a hearing was held on Michael's RFO to set aside the renewed DVRO, filed May 25, 2021. Our record on appeal does not include a copy of Michael's RFO and responsive pleadings, if any. Janet appeared in propria persona; Michael appeared with Gates as limited scope counsel and Norris as his counsel "for all purposes." The court found defective Michael's service of the RFO on Janet, as he served the RFO by mail and not by personal service as required by section 6345, subdivision (d). The court denied the RFO.

VI.    *Michael's Second RFO to Set Aside the DVRO*

On September 13, 2021, Michael filed another RFO to set aside the renewed DVRO for "lack of jurisdiction and improper notice" or, in the alternative, to terminate or modify the renewed DVRO. He argued the court "lost jurisdiction to issue the new DVRO because the three-month time limit in [section 6345] ran out for the matter to be 'brought.' " He also argued service was

11

not proper, as he was served on December 1, 2020 with notice of the hearing set for December 4, 2020. Upon the court's continuance of the hearing on its own motion to January 8, 2021, Michael "was never given notice of the new court date." He argued he was further entitled to the requested relief based on Code of Civil Procedure section 473, subdivisions (b) and (d).

In his supporting declaration, Michael stated he had not lived in California since his move in November 2017. He confirmed he was personally served with Janet's DVRO renewal papers on December 1, 2020 while in Bullhead City. He "did not have time to respond . . . because of the short notice" and "was not able to make travel arrangements to Los Angeles to attend the hearing on the short notice of only three days." He has "no [e-mail] and would not know how to investigate the legal matter of the restraining order and court processes on [his] own." He "was not served with notice that the hearing on December 4, 2020 had been continued to January 8, 2021." He spoke with Gates in December 2020 and from January to February 2021 because of the "lawsuit pending in Arizona over the Bullhead City property and she still works on that with [him]." At some point, Gates told Michael they "needed to talk about the restraining order and told [him] that a new one had been issued." Michael gathered "a little money together" and retained Gates to assist with the DVRO matter.

Gates provided a declaration in support of Michael's RFO. She has represented Michael "regarding various matters over the years." She was his counsel of record for "the trial in his dissolution" and "continued to represent him in regard to an issue that arose from the dissolution—specifically the Bullhead City residence"; she did not represent him at the hearing on the

original DVRO. "Throughout 2020, [she] had occasional contact with Michael about the property in Bullhead City because there is a lawsuit pending in Arizona between the parties." Counsel "remember[ed] that in December Michael contacted [her] and let [her] know that he got served with the DVRO renewal application when he was at the property dealing with things for the lawsuit." Counsel "let him know that the service was not timely so there could be no hearing on the day noticed" and "Janet would need to get another date and that he would have to be served again."

Gates stated she used her law firm's mailing address on Palm Canyon Drive in Palm Springs when she filed her "Notice of Limited Scope Representation" in August 2020. She further stated she "did not get mail at 777 Tahquitz Canyon in December 2020 or anytime thereafter."

On January 15, 2021, Gates received an e-mail from Janet with the renewed DVRO and responded to her that same day: "[A]s I have told you and the court multiple times, I do not represent Michael on this matter. You will need to serve him personally with this order yourself. I am NOT authorized to accept service of documents for him." A copy of Gates's e-mail response was attached as an exhibit.

"In mid-February," Gates told Michael she "needed to talk to him about" the renewed DVRO. Michael retained Gates with $700 on February 24, 2021 "to look into the matter." Based on her "research . . . and the facts of the case it seemed clear that Michael did not get served properly with the renewal application," which indicated to her the order was "voidable." Per Gates, the "fact that the hearing was continued well beyond the termination of the original order seemed like a fatal flaw."

13

VII. *Hearing and Ruling*

The court held a hearing on Michael's second RFO on November 19, 2021. Michael appeared with Gates; Janet appeared in propria persona. The court expressed it was "very confused because Ms. Norris is the counsel of record" for Michael. Gates informed the court Norris is "lead counsel" and Gates is "counsel with regards to this motion only."

The court found Michael's RFO "untimely" under Code of Civil Procedure section 473, subdivision (b), as it was filed "outside the six-month window." The court explained the DVRO "was renewed . . . in January of 2021. Here we are in November and you filed this request in September which is two months . . . after" the deadline.

The court further ruled: "The fact that he was not served with the [request for] renewal of the restraining order within three months of her filing the request does not divest this court of jurisdiction, absolutely not. There is no case law. There's no statute that says that, and that would essentially make the renewal of a restraining order meaningless because the restrained person could . . . basically avoid service for three months under your logic, and then be [scot-free], and that is not the purpose of the Domestic Violence Prevention Act."

The court next confirmed Michael was served with the renewed DVRO by mail. At this point, Gates interjected: "He had no attorney, your honor, you can't serve somebody with something through an attorney they don't have. [¶] . . . [¶] I have never represented Mr. Ortega in the DVRO matter ever." The court replied: "And yet you're here representing him now in the DVRO matter, so curious." The court added: "I'm so confused because you've explained to me he [*sic*] not only is he homeless,

14

not only does he have one attorney, he has two different law firms representing him. So this idea he has no attorney I reject one hundred percent. Ms. Gates, you've made this argument many times that you only represent him for some things and not other things. The service was complete."

The court denied Michael's RFO and his "alternate request for a hearing to terminate or modify [the] renewed DVRO."

Michael timely appealed.

## DISCUSSION

I.      *Standard of Review and Applicable Laws*

The DVPA "permits the trial court to issue a protective order 'to restrain any person for the purpose' of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved; the petitioner must present 'reasonable proof of a past act or acts of abuse.' " (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820; see also §§ 6220 & 6300.) The trial court may renew a DVRO "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order. . . . subject to termination, modification, or subsequent renewal by further order." (§ 6345, subd. (a).) The renewal request "may be brought at any time within the three months before the expiration" of the underlying DVRO. (*Ibid*.) The court may issue a DVRO "after notice and a hearing." (*Ibid*.)

Code of Civil Procedure section 473, subdivision (b) contains both mandatory and discretionary provisions for relief. (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) For our purposes, the discretionary

15

provision states the court "may . . . relieve a party or his or her legal representative" from a variety of orders, including a "judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).)

A motion to set aside is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, the exercise of that discretion will not be disturbed on appeal. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.) The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118.) On appeal, the lower court's ruling on a motion to set aside a judgment or order " 'is presumed to be correct . . . , and all intendments and presumptions are indulged in favor of its correctness.' " (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718.)

With respect to timeliness, a party seeking relief under Code of Civil Procedure section 473 must be diligent. (*Zamora v. Clayborn Contracting Group, Inc*. (2002) 28 Cal.4th 249, 258; accord, *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420 ["threshold requirement for relief is the moving party's diligence"].) The statute provides that a party moving for discretionary relief must do so "within a reasonable time, in no case exceeding *six months*, after the judgment, dismissal, order, or proceeding was taken." (Code Civ. Proc., § 473, subd. (b), italics added.) What constitutes a reasonable time in any case depends upon the circumstances of that particular case and is a question of fact for the trial court. (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 33.) We review factual findings made by the trial court in resolving a motion to set aside or vacate for

16

substantial evidence.  (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440–1441; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.)  Any statutory interpretation or legal conclusion is subject to independent review.  (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

II.   *Service and Notice of the Hearing on Janet's Request to Renew the DVRO Was Proper*

Michael argues he was "not served timely notice of the hearing on December 3rd" and Janet "took no steps to notice him of the change of date and therefore Michael would not have known to appear on January 8th."  He relies on "CCP § 6345" to support his claim that the renewed DVRO is "voidable."

There are many inconsistencies embedded in Michael's argument.  First, no hearing was set for "December 3rd."  There was a hearing set for December 4, 2020, which the court continued to January 8, 2021, on its own motion.  Second, there is no "CCP § 6345"; there is a Family Code section 6345, but there is no language in that statute addressing DVRO set-aside relief.  Third, the trial court expressly found on January 8, 2021 that service of Janet's request to renew pleadings on Michael was proper.  Michael argues the court erred in making such a finding and the DVRO is voidable as a result of improper service/notice.

Michael's argument that December 1, 2020 service of the pleadings and notice for the December 4, 2020 hearing is ineffective is not well taken.  On November 30, 2020, the court had advanced and continued the December 4 hearing to January 8, 2021, and the court clerk mailed notice of this change.  "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail."  (Evid. Code, § 641.)

17

Michael acknowledged being personally served by Janet on December 1. The clerk's certificate of mailing provides that notice of the continued date of January 8, 2021, was sent to Gates's address at the Gay Family Law Center at 777 E. Tahquitz Canyon Way, Palm Springs. Gates, however, stated in her declaration that she no longer received mail at that address "in December 2020 or anytime thereafter." That may be so, but the record does not include any notice of change of firm address filed by Gates to that effect. Nor does the trial court case summary show such pleading. Gates cannot blame the court clerk for sending mail to her last known address when she herself did not properly update her address.

Gates relies on her "Notice of Limited Scope Representation" filed in August 2020 which included in the caption her mailing address on Palm Canyon Drive in Palm Springs; but a notice of limited scope representation puts the court and the parties/counsel on notice of the scope of counsel's representation of a client and does not substitute for a properly filed change of address.

Michael protests as well that Gates was not his attorney of record for the DVRO. However, in light of the fact that she appeared on his behalf in connection with the renewal of the DVRO, including his later motion to set it aside, we cannot find that the trial court erred in sending notice of the continued hearing date to Gates instead of to Michael himself, particularly where, as here, the record reflects Gates communicated with Michael about Janet's RFO for renewal of the DVRO upon his receipt of the pleadings in December 2020 and before the January 8, 2021 hearing date.

18

III. *The Court Did Not Lose Jurisdiction to Issue a Renewed DVRO*

Michael next argues, with no authority, that the court "lost jurisdiction to hear" Janet's request to renew the DVRO because he was "not served within the time required nor was the hearing on the request heard within that time." He refers to section 6345, which provides, in part, that a "request for renewal may be brought at any time within the three months before the expiration of the orders." (§ 6345, subd. (a).) He contends Janet's request to renew was not "brought" before the court because he was not personally served with the request within those three months and because the hearing on Janet's request did not take place during those three months.

This argument has no merit. Neither the law nor the purpose of the DVPA support this notion.

The request was brought, i.e., filed, within the three months preceding the expiration of the DVRO. The idea that the court's continuance of a matter somehow divests the court of jurisdiction makes no sense and Michael has provided us with no legal authority to conclude otherwise. We agree with the trial court "that would essentially make the renewal of a restraining order meaningless because the restrained person could . . . basically avoid service for three months under your logic, and then be [scot-free], and that is not the purpose of the Domestic Violence Prevention Act."

IV. *Michael's Motion to Set Aside Was Untimely Filed*

Michael next argues the trial court erroneously denied his motion to set aside the DVRO as untimely.

19

We disagree.  The DVRO was issued on January 8, 2021.  Code of Civil Procedure section 473, subdivision (b) requires a set-aside motion to be filed within six months of the order, here by July 8, 2021.  Michael timely filed his first RFO to set aside the renewed DVRO on May 25, 2021, but his defective service of the first RFO on Janet prompted the court to deny the RFO.  Michael's second RFO to set aside (i.e., the underlying motion) was filed on September 13, 2021, more than two months after the six-month deadline set by Code of Civil Procedure section 473, subdivision (b).  Michael's second RFO to set aside the renewed DVRO was untimely filed.

V.     *The Court Did Not Abuse its Discretion in Denying Michael's Request for a Hearing*

Michael argues the trial court abused its discretion "when it failed to grant Michael's request for a hearing on the merits" of Janet's request to renew the DVRO.  We disagree.  The court was under no obligation to entertain Michael's late-filed RFO to set aside the renewed DVRO.

Michael next argues the court abused its discretion in denying his first RFO because of defective service.  We do not entertain this argument as Michael did not timely appeal the court's August 12, 2021 order denying his first RFO.  It is not within the scope of this appeal.

Michael also argues the trial court abused its discretion by denying Michael's "alternative [request] to have a hearing to terminate or modify the renewed DVRO."  He contends the trial court "should have, at the very least, set a date for Michael to present evidence as to why the DVRO should be terminated or modified."  Michael, however, provides no statute or case law to support this argument.  (*In re Marriage of Falcone & Fyke* (2008)

20

164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

VI. *There Was No Error Setting the Termination Date for the Renewed DVRO*

Michael's final argument is the trial court "incorrectly set the date of termination of the extended DVRO as January 8, 2026"—five years from the date of the renewed DVRO on January 8, 2021. He contends the court should have set a termination date of November 18, 2024—five years from the date of the termination of the original order. He provides two sentences of argument in support: "Appellant's liberty may be restricted for five (5) years by a DVRO. Appellant's total time of restriction should be ten (10) years [and not] eleven (11) years and two (2) months."

Michael has not provided legal authority to support his argument, and we have not found any. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 165, fn. 6 [we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt].) He has forfeited this contention.

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to Janet Ortega.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



GRIMES, J.



WILEY, J.