Filed 9/19/23  Marriage of Anton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of MARILY W. and THOMAS J. ANTON. | |
| MARILY W. ANTON,<br><br>Respondent,<br><br>v.<br><br>THOMAS J. ANTON,<br><br>Appellant. | F085420<br><br>(Super. Ct. No. BFL-20-002090)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Raymonda B. Marquez, Judge.

Michael R. Kilpatrick & Associates and Michael R. Kilpatrick for Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Jerry D. Casheros and Ella A. Moberg for Respondent.

-ooOoo-

In May 2020, Marily Anton filed a petition for legal separation from her husband Thomas Anton.[1]  She amended her petition to one for dissolution in February 2021.  When Thomas failed to respond, Marily sought a default judgment in June 2021.

After default was entered, Thomas moved to set it aside.  The court declined to grant relief.  It ultimately entered judgment dissolving the marriage and dividing the parties' property.

Thomas appeals, claiming the court erred in denying the motion to set aside default and in its property division.  We affirm.

## **BACKGROUND**

Marily, in pro. per., first filed for legal separation from Thomas in May 2020 and later, after retaining counsel, amended the filing to dissolution in February 2021.  The amended petition made clear Marily intended the court to assign separate property and divide community property.  Thomas never responded.

Default and Set Aside Motion

After default was sought and entered in June 2021, Thomas moved to set it aside.  Thomas argued relief was warranted because he "was recovering from … a chronic heart condition," "stress[ed]," "drinking heavily and … understandably depressed," "lost key office staff" at his legal practice "who had been attempting to assist with [a] response," was "basically homeless," and was "unable to retain family law counsel."

Thomas testified to much the same at the hearing on the motion.  He acknowledged he was aware of the petition for separation, tried working through "marital differences" for "[a]round seven to eight months," and then was served with the petition for dissolution.  He continued to attempt to save his marriage.  Meanwhile, his heart problems lingered and "a senior associate who was handling many cases with" him left the practice, "thr[owing] a big monkey wrench into the business."

---

[1] We use the Antons' first names for clarity.  We intend no disrespect.

2.

During the hearing, the parties stipulated "the nature of [the] former marital residence" was in dispute.  Marily contended it was "entirely her separate property" while Thomas claimed he had acquired "a substantial community property interest" by paying "for it for 30 years," including significant improvements.[2]

Ultimately, Thomas conceded in his testimony he sent Marily "settlement letters" "in the fall of 2020 and … various times in 2021 …."[3]  He "was trying to save everybody money" by settling informally.

Ruling on Default

On February 15, 2022, the court denied the motion to set aside default, finding Thomas "was aware of the filing of the petitions and chose to not file a response."  In its ruling, the court explained Thomas "was trying to convince [Marily] that the divorce was very expensive."  The court noted "the summons"—filed and served with the petition— "advises a party … you have 30 days after this summons and petition are served on you to file a response and to have the copies served on petitioner.  A letter, phone call, or court appearance will not protect you.  If you do not file your response on time, the Court may make orders affecting your marriage or property."[4]

The court concluded Thomas's "mental health" was not diminished and the "evidence demonstrate[d] that [he] was aware of the divorce proceedings, he had the notice of the need to respond or that the Court may make orders affecting the marriage and property.  Other than timely filing a response, [Thomas] chose to engage in unsuccessful attempts to reach a resolution with" Marily.

---

[2] For example, Thomas asserted the home increased in square footage from 2,000 to 6,000 during the marriage.

[3] Various filings in the trial court included several written communications between Marily and Thomas.  Those communications often discussed the case.

[4] The court's cautionary-language quote is directly from Form FL-110, the mandatory Judicial Council of California form used to provide a divorce-summons to a spouse.  (Cal. Rules of Court, Appendix A.)

Finally, the court found "no credible evidence [alcohol consumption] impacted [Thomas's] daily ability to function" nor any "credible evidence that [health] circumstances impaired [his] daily ability to work or address" the petition for dissolution. It subsequently denied the motion.

Judgment

The court issued a tentative ruling regarding property division. Relative to the primary residence, the court noted it "received evidence of improvements made to the real property during the marriage and paid for with community funds. Further, the evidence showed that the mortgage principal was reduced during the marriage from community sources." The "court reserve[d] jurisdiction as to claims of community interest or Moore/Marsden claims for improvements to the property and mortgage payments, pending further evidence."[5] It also assigned a home equity debt to Marily.[6]

Marily objected to the tentative ruling. She pointed out the fact the court, in assigning the home equity debt to Marily, failed to appreciate Thomas breached his spousal-fiduciary duty by, unbeknownst to her, withdrawing "$280,000" against their home and then "default[ing] on the payments …." She requested the debt, although assigned to her, "be treated as if it was [Thomas's] separate property and deduct the amount of the debt from any equalization payment owed."

Separately, Marily addressed the court's *Moore/Marsden* concern. She claimed Thomas had previously filed for bankruptcy and, at the end of bankruptcy proceedings in

---

[5] "Generally, '[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. [Citations.] This well-established principle is known as "the *Moore/Marsden* rule." ' " (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1552.) It also applies " '[w]here community funds are used to make capital improvements to a spouse's separate real property …." (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1423.)

[6] We discuss only the property relevant to the issues raised on appeal.

4.

2005, she "retain[ed] the house as [her] sole and separate property" and in which Thomas had "no interest whatsoever …."

The court ultimately ruled the community's interest in the home was "$295,734.45," all accrued after bankruptcy was final. It also found Thomas "breached his fiduciary duty to [Marily] in connection with" the "home equity" debt and "treat[ed]" it as his separate property, deducting "$283,880 from any equalization payment owed [to him]." All told, "[t]o achieve an equal division of [p]roperty," Thomas owed Marily an "equalization payment of $154,742."[7]

## DISCUSSION

Thomas argues the court erred in failing to set aside the default and its property division. We disagree and affirm.

## I. Default

A "court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., section 473, subd. (b).)[8] "A motion to vacate under section 473[, subdivision] (b) ' " 'is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse ... the exercise of that discretion will not be disturbed on appeal.' " [Citations.] The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 929.)

"Section 473 is a remedial statute to be 'applied liberally' in favor of relief if the opposing party will not suffer prejudice. [Citations.] '[B]ecause the law strongly favors

---

[7] Thomas was also awarded his law practice—valued at zero—and an interest in Marily's retirement pension. "The court [found] that [Thomas's] interest and 'buyout' value" in the pension was "$258,750.00."

[8] Undesignated statutory references are to the Code of Civil Procedure.

5.

trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.' [Citations.] 'Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails.' " (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 24 (*Minick*).)

We discern no abuse of discretion in this case. The record is clear Thomas knew Marily filed a petition to dissolve the marriage *and* asked the court to assign separate property and divide community property. The trial court concluded that Thomas actively chose not to reply.

Instead, Thomas chose to attempt informal settlement with Marily. He consciously disregarded the risk associated with default. The trial court reasonably found Thomas's mental health and other life circumstances did not interfere with his ability to file a response to the petition. "[I]nexcusable neglect is clear" and Thomas is not entitled to relief. (*Minick, supra,* 3 Cal.App.5th at p. 23.)

We note that the trial judge made detailed findings and conclusions in support of her decision, which were based on the record and reflected in the hearing transcript. There is no basis for us to find an abuse of discretion on the part of the trial judge.

## II. Property Division

Generally, " 'the entry of a default terminates [the defaulting party's] rights to take any further affirmative steps in the litigation until … the default is set aside.' " (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1037.) Thomas asks this court to vacate the judgment because he "will suffer the loss of over 1.2 million dollars without an adversarial hearing on the merits …." He also complains Marily "breached her fiduciary duty to disclose all assets and liabilities" including a "$455,000 loan."

" 'It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together.' A harsh default judgment under which there is a grossly disproportionate division of the community

property, inadequate support payments, and minor children taken away from a parent, should be vacated without hesitation in order to allow the case to be heard and determined on its merits." (*Necessary v. Necessary* (1962) 207 Cal.App.2d 780, 784; Fam. Code, § 2120, subd. (b) ["It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties."].)

We discern no fraud in this case. Section 473, subdivision (b), demands a motion to vacate default "be accompanied by a copy of the answer or other pleading proposed to be filed …." The record does not contain a copy of Thomas's proposed answer, although it does appear he complied with the statute.[9]

Nonetheless, the parties stipulated Thomas was asserting a community interest in the home. The judge reasonably considered his request and awarded him a more than $100,000 interest in the home. The judge's rationale included the fact Thomas had disclaimed any interest in the home during the 2005 bankruptcy.[10] We have no occasion to question this conclusion.

Thomas " 'has the burden of providing an adequate record.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional

---

[9] In a declaration attached to Thomas's request to set aside default, he stated his "proposed Response and Request for Dissolution of Marriage [w]as attached … and incorporated as *Exhibit 'A*.' " There is no such exhibit in the record. In the declaration itself, however, Thomas claimed he expended "$455,000.00 remodeling" the home.

[10] The bankruptcy case is referenced in but not included with the record.

7.

doctrine of reversible error.' " (*Id.* at pp. 608-609.)  Thomas has not discharged his burden.

The record does not contain enough information to find, or even infer, fraud. Nothing in the record—other than Thomas's words—suggests Marily violated a fiduciary duty.  (See Fam. Code, § 721.)

Finally, we note the court had a statutory duty to "divide the community estate of the parties equally."  (Fam. Code, § 2550.)  Judges are presumed to follow the law. (Evid. Code, § 664.; *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 706-707.) The record demonstrates the judge conscientiously considered Thomas's assertion related to community interest in the home.  On this record, Thomas's request to vacate the judgment fails.[11]

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Marily.

---

[11] Nothing in our opinion forecloses Thomas from pursuing fraud-based claims in the trial court.  We express no opinion on whether he should, or on the merit of a potential claim.  We also note trial courts retain "jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment …."  (Fam. Code, § 2556.)  We note these procedures not to suggest there is any merit to Thomas's assertion, but rather to underscore the fact he has failed to prove error.

SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


PEÑA, J.