Filed 3/15/24  ACMC Finance and Trade v. Khachatryan CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ACMC FINANCE AND TRADE LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SARGIS KHACHATRYAN et al., <br><br> Defendants and Appellants. | B321981 <br><br> (Los Angeles County Super. Ct. No. 19LBCV00725) |

APPEAL from orders of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Grand Park Law Group and Armand J. Jaafari; Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Defendants and Appellants.

Kluewer Law and Joshua T. Kluewer for Plaintiff and Respondent.

—————————————

# INTRODUCTION

Sargis Khachatryan (a.k.a. Sam Saryan), Sona Apikian (a.k.a. Sona Saryan), and Gianni Saryan[1] (collectively, Appellants) appeal the trial court's order denying their motions to set aside default and default judgment under Code of Civil Procedure section 473.5.[2]

In September 2017 Energy Product Company LLC and Energy Trading Company LLC (Energy Trading)—two oil companies allegedly controlled by Appellants and their family—received a $2,450,000 loan from OSA Finance and Trade. This loan was never repaid.

In 2019 ACMC Finance and Trade (ACMC), an affiliate of OSA Finance and Trade, sued Energy Trading, Appellants, Jack Khachatryan (a.k.a. Jack Saryan), and others seeking repayment of the loan. ACMC attempted to serve Appellants personally, but could not locate Appellants even after hiring two private investigative firms. ACMC's investigators both independently concluded Appellants were "intentionally hiding their whereabouts." ACMC ultimately served Appellants by publication. When Appellants' immediate relative, Jack Khachatryan, answered ACMC's complaint in February 2021,

---

[1]     Gianni Saryan's first name is spelled "Gianna" in this court's case caption, but most of the record reflects the spelling "Gianni." We use "Gianni" as it is the predominant spelling in the record.

[2]     Undesignated statutory references are to the Code of Civil Procedure.

2

ACMC requested discovery of Appellants' addresses, but Jack refused to provide them.[3]

ACMC requested entry of Appellants' default in March 2021 and then obtained a default judgment against them in October 2021. Appellants appeared and moved to set aside the default in March 2022, asserting they lacked actual notice under section 473.5. The trial court denied their motion, among other reasons, because Appellants had failed to demonstrate any lack of actual notice had not resulted from their avoidance of service of process or their inexcusable neglect.

Appellants argue the trial court erred. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

On December 20, 2019 ACMC sued Energy Trading Company LLC; Jack; Appellants Apikian, Sargis, and Saryan; John Davids, and Dennis Rogers Jr. According to the complaint, Jack and Appellants are the owners of Energy Trading. Jack is the father of Saryan and husband of Apikian; Sargis is Jack's brother.

ACMC alleged its predecessor, OSA Finance and Trade LLC, loaned $2,450,000 to Energy Product Company LLC in September 2017.[4] The loan was executed via a "Joint Finance

---

[3] Since Jack and Appellant Sargis Khachatryan share the same last name, we refer to them by their first names. Our use of first names is for clarity only and we intend no disrespect.

[4] OSA Finance and Trade LLC assigned to ACMC Finance all claims in connection with the Energy Trading loan agreements.

3

Agreement," signed by "Jack Saryan / Gianni Saryan" with "the authority to bind Energy Product Company, LLC." Davids and Rogers "acted as intermediaries" in the negotiation of the loan. Return of the principal was due in 30 days, along with 2 percent interest.

As the loan became due, ACMC alleged, Jack and Saryan claimed the signature on the loan agreement was a forgery and asked for more time to repay the loan. The parties executed another loan agreement in December 2017, allowing another of Jack's companies, Energy Trading Company LLC, to assume responsibility for the loan and repay it over a longer period of time. Under the second loan agreement, the loan was to be paid in full by September 2018. According to ACMC, Energy Trading soon stopped making payments on the loan.

The complaint alleged "[Jack] Khachatryan and Khachatryan's family members—Sargis, Sona and Gianni—own and/or control Energy Product and Energy Trading and have participated in a scheme to strip these entities of their assets while misappropriating the relevant loan proceeds for themselves." ACMC alleged 12 causes of action: breach of contract, money had and received, unjust enrichment, common count for money lent, promissory fraud, fraud through intentional misrepresentation, negligent misrepresentation, conversion, intentional interference with contractual relations, intentional fraudulent transfers and constructive fraudulent transfers under the Uniform Voidable Transactions Act, and civil conspiracy. The complaint requested damages "in the amount of $2,450,000 plus costs, fees, punitive damages and interest."

4

B.    *Service of Process by Publication*

On May 7, 2020 ACMC filed an application to serve the individual defendants—Jack and Sargis Khachatryan, Apikian, and Saryan—by publication. The application stated that ACMC "first attempted to serve the summons and complaint on all four of the [individual] Defendants at Energy Trading Company LLC's ("Energy Trading") principal place of business," in Long Beach, "an address with which all four [individual] Defendants are associated." Process servers, however, were unable to locate any of the Appellants at this address. "Thereafter, ACMC engaged two separate private investigative firms to locate all four of the [individual] Defendants." Both investigative firms conducted background checks and identified potential addresses for each of the Appellants but were unable to locate Appellants at any of the addresses.

Attached to the application were declarations from the private investigators hired by ACMC. The first declaration was from Sarah Byrnes, a licensed private investigator and the head of the Investigation Practice at Mega Group Investigations, which ACMC retained in January 2020. Byrnes personally visited five recent potential addresses for Appellants in Beverly Hills, Los Angeles, and Long Beach but could not locate Appellants. Byrnes noted Sargis "uses three social security numbers and has comingled social security numbers and dates of birth with other individuals." Based on her efforts, Byrnes concluded that Appellants "are all intentionally hiding their whereabouts and are intentionally making themselves difficult or impossible to locate."

The second declaration was from Paul Dryman, another licensed private investigator and the president and CEO of

5

Informed Decision, an investigation corporation ACMC hired in December 2019.  Dryman "conducted several database searches utilizing privileged sources not available to the public, and used public records and social media resources in order to attempt to locate Jack, Sona, Sargis, and Gianni."  From this research, Dryman learned Appellants "were each potentially associated with . . . three addresses" in Beverly Hills and Long Beach.  Dryman's process servers were unable to serve Appellants at any of these addresses and learned "these addresses were no longer good addresses for [Appellants]."  Dryman believed Appellants were "intentionally hiding their whereabouts."

On this basis, ACMC asserted it exercised "reasonable diligence" in attempting to personally serve Appellants and thus service by publication was proper.  The trial court agreed and granted ACMC's motion to serve Appellants by publication on May 13, 2020.  On July 2, 9, 16, and 23, 2020 ACMC served Appellants by publication in the Grunion Gazette, a newspaper based in Long Beach.

C.    *The First Amended Complaint and Service by Publication*

In August 2020, after defendant Rogers demurred to the allegations against him, ACMC filed a first amended complaint (FAC).  As relevant here, the FAC contained three changes from the original complaint.  First, the FAC omitted a claim for unjust enrichment.  Second, the FAC added a new cause of action for "Common Count to Recover Money Paid by Mistake and Fraud" against all defendants.  Third, the introductory paragraph in the FAC alleged the defendants "agreed to a common plan to take OSA's money" and "are all liable for each other's torts and liabilities per the doctrine of civil conspiracy."  The original

6

complaint contained these allegations in the cause of action for civil conspiracy.

After filing the FAC, ACMC obtained a second summons and again served Appellants by publication in the Grunion Gazette on October 29, November 5, November 12, and November 19, 2020. ACMC republished the summons in the Grunion Gazette on February 4, 11, 18, and 25, 2021. The February publication included a statement of damages against each Appellant.

D.      *Communications Between Counsel About the Lawsuit and Appellants' Addresses*

In late January 2021 counsel for Jack, Paul Fine, contacted counsel for ACMC by email about the case. Fine wrote: "I have been retained by Jack Saryan and Gianni Saryan to represent their interests in the subject litigation. I will speak with Sona Saryan and Sam Khachatryan to determine if I will additionally be representing their interests."

ACMC's counsel responded: "[I]f you could please send us home addresses for each Jack Khachatryan a/k/a Jack Saryan, Gianni[] Saryan, Sona Apikian a/k/a/ Sona Saryan and Sargis Khachatryan a/k/a Sam Saryan that would be much appreciated. . . . [W]e would like to respect their due process rights and having their addresses such that we can hand deliver documents will allow us to do that."

Fine replied: "I will request authority to provide that information to you. At present, I need to make sure that I will not have a conflict of interest in representing the individuals." ACMC did not receive any further information, although the record before us does not reflect ACMC followed up with Fine.

7

Shortly after this exchange, Jack and Energy Trading entered an appearance on February 16, 2021 and answered ACMC's complaint. ACMC sought discovery from Jack pertaining to Appellants' home addresses, but he refused to disclose any information about where his wife, son, or brother were living. The court eventually imposed terminating sanctions against Jack "due to [his] ongoing failure to provide basic responses about, among other things, his family's whereabouts."

E.    *The Default Judgment*

On March 29, 2021 ACMC filed a request for entry of default against Appellants using Judicial Council form CIV-100. Where form CIV-100 asked for the date of "the complaint," ACMC indicated December 20, 2019, the date of the original complaint, rather than the FAC. The clerk entered default for ACMC.

On October 13, 2021 ACMC requested a default judgment against Appellants. After a default prove-up hearing, the trial court entered judgment for ACMC against Appellants on October 18, 2021. The default judgment awarded ACMC $2,450,000 in damages, $405,626.03 in prejudgment interest, and $1,275.45 in costs. The trial court held Appellants jointly and severally liable for the judgment.

F.    *Appellants' Motions to Set Aside the Default Judgment*

On March 24, 2022 Appellants, through counsel, each filed a motion to set aside the default and default judgment. As relevant here, Appellants argued the judgment was void under section 473, subdivision (d); they lacked actual notice of the action under section 473.5 because the summons was published in a "locale . . . inadequate to provide notice;" and they did not file

8

an answer because of their "attorney's mistake, inadvertence, surprise or excusable neglect." They also asserted ACMC improperly requested entry of default on the original complaint, rather than the FAC. Finally, they argued ACMC failed to exercise reasonable diligence in attempting personal service before serving Appellants by publication.

Appellants filed separate, identical declarations stating: "I have been a resident in the City of Los Angeles for over five (5) years and have never been a resident in the City of Long Beach. [¶] I do not live with Jack Saryan [a.k.a. Jack Khachatryan] and was unaware of this action. [¶] There were no communications ever made to me that there were any attempts to serve me in this action. [¶] Upon receiving a notification that Plaintiff moved for default judgment, I promptly retained counsel."

The trial court denied Appellants' motions on March 25, 2022 "for numerous reasons." The court first denied the motions as "confusing, often meandering between code sections in a way that is not conducive to analysis." As to relief under section 473.5, the court observed "a motion brought per § 473.5 must be accompanied by an 'affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect.' [Appellants] filed no such declaration." While the motion asserted relief for defense counsel's "excusable neglect," the court "reviewed Counsel's declaration in this regard," noting it was "a mere four paragraphs long" and "says absolutely nothing about neglect, and therefore cannot support relief."

Considering Appellants' challenge to publication in the Grunion Gazette, the court reaffirmed "its prior decision to permit service by publication" and noted Appellants "do[] not cite

9

any authority for the position that, if a publication order was issued in error, the resulting default and default judgment are void." The court further observed Appellants "suggest[] [ACMC] should have ascertained [their] whereabouts by 'simple discovery' propounded on Jack Saryan and/or Energy Trading," but Appellants disclaimed any relationship to Energy Trading and Saryan had refused to disclose Appellants' addresses.

Finally, the court rejected Appellants' argument that the default judgment was erroneously entered on the original complaint, rather than the FAC. The court further explained that "Plaintiff's FAC only changed allegations as to Rogers, who had demurrer, and not as to [Appellants], who had not appeared. . . . [W]hen the complaint and FAC contain the same substantive allegations against a defendant, any failure to specifically note 'first amended' on the default form is not material."

The court ordered ACMC to give notice of its ruling. ACMC served Appellants on April 14, 2022 with a "Notice Pertaining to Ruling on [Appellants'] Motion to Vacate the Default and Default Judgments." Attached was a file-stamped and signed copy of the trial court's order denying Appellants' motions to set aside the default and default judgment. ACMC attached a proof of service indicating Appellants' counsel was served with the "Notice Pertaining to Ruling."

G.    *Appellants' Motions for Reconsideration*

On April 12, 2022, pursuant to section 1008, Appellants moved for reconsideration of the trial court's order denying their motions to set aside the default judgment.

10

Accompanying the motions was a new declaration from Paul Fine, Jack's attorney. Fine declared: "On or around January 22, 2021, counsel for [ACMC] and I spoke regarding the representation of Jack Saryan, Gianni Saryan, Sona Apikian and Sam Khachatryan. To the best of my recollection, I told [ACMC's counsel] that I had been retained by Jack Saryan and the company, but that I would speak with Gianni Saryan, Sona Apikian and Sam Khachatryan about possible representation. However, I never spoke with Gianni Saryan, Sona Apikian and Sam Khachatryan and instead informed Jack Saryan shortly after our January 22, 2021 meeting that I could not represent Gianni Saryan, Soan Apikian and Sam Khachatryan in this matter and that they needed to locate separate counsel. I never spoke with Gianni Saryan, Sona Apikian and Sam Khachatryan about this matter."

In addition, Appellants attached a declaration from their attorney stating that any deficiencies in Appellants' prior declarations and any "confusion" between legal arguments were the result of counsel's "mistake, inadvertence, surprise, and excusable neglect." Appellants also included updated individual declarations, adding the following language: "I did not have any actual notice of this action. The lack of notice was not caused by my inexcusable neglect or deliberate avoidance of service by me."

The trial court summarily denied Appellants' motions on June 21, 2022 "on the ground that the Court has no jurisdiction to reconsider its prior ruling in light of the fact that judgment has already been entered."

Appellants filed notices of appeal on July 7, 2022.

11

**DISCUSSION**

Appellants raise two primary arguments on appeal. First, Appellants challenge service by publication and contend that the FAC made substantive amendments that "re-opened" the default, which in their view required a new attempt at personal service.[5] Second, they argue the court erroneously denied their motions to set aside the default judgment and their subsequent motions for reconsideration.[6] But first, we address the timeliness of the appeal.

A.      *Timeliness of Appeal*

ACMC argues we lack jurisdiction over this case because Appellants did not file a timely notice of appeal. (See *Hollister Convalescent Hospital, Inc. v. Rico* (1975) 15 Cal.3d 660, 670 ["[T]he timely filing of an appropriate notice of appeal . . . is an

---

[5]      On reply, but not in their opening brief, Appellants argue the default judgment is void under section 473, subdivision (d). "We do not consider arguments raised for the first time in a reply brief." (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8; *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."].)

[6]      Appellants also seem to challenge the trial court's personal jurisdiction over them. The trial court does not appear to have made any ruling on the matter, nor does the record before us reflect Appellants filed a motion to challenge personal jurisdiction. For this reason, we need not address this argument on appeal, including whether Appellants' post-default participation in the litigation waived any such objection.

absolute prerequisite to the exercise of appellate jurisdiction."].) ACMC's argument is unpersuasive. Under California Rules of Court, rule 8.104(a)(1)(B) and (C): "a notice of appeal must be filed on or before the earliest of: 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or 180 days after entry of judgment."[7] ACMC argues it served Appellants on April 14, 2022 with notice of the trial court's order denying their motions to set aside the default judgment, triggering Appellants' deadline to file the notices of appeal within 60 days.

ACMC did not serve a proper notice commencing the 60-day deadline because it did not serve Appellants with "a document entitled 'Notice of Entry' of judgment," but instead served a "Notice Pertaining to Ruling on [Appellants'] Motion to Vacate the Default and Default Judgments." (See Cal. Rules of Court, rule 8.104(a)(1)(B); *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 903 ["[C]ourts have consistently held that the required 'document entitled "Notice of Entry"' must bear precisely that title."] [citation omitted]; *20th Century Ins. Co. v. Superior Court* (1994) 28 Cal.App.4th 666, 671-672 [document titled "'notice of ruling,' not 'notice of entry'" was insufficient].) Nor did ACMC serve Appellants with "a filed-endorsed copy of the judgment, accompanied by proof of service." (Cal. Rules of Court, rule 8.104(a)(1)(B).) Although ACMC's notice included a filed-endorsed copy of the trial court's order, ACMC's proof of

---

[7] For purposes of this rule, "'judgment' includes an appealable order if the appeal is from an appealable order." (Cal. Rules of Court, rule 8.104(e).)

13

service reflected that it had served Appellants with its "Notice Pertaining to Ruling," but did not indicate service of the court's order. (See *Thiara v. Pacific Coast Khalsa Diwan Society* (2010) 182 Cal.App.4th 51, 56 [rule 8.104(a)(2) not satisfied without an adequate proof of service "setting forth specified information" in the rule]; see also *In re Marriage of Lin* (2014) 225 Cal.App.4th 471, 474 ["[W]e strictly construe statutes and rules concerning the time in which to file a notice of appeal."].)

Accordingly, Appellants' notices of appeal were timely filed within 180 days of the order appealed under California Rules of Court, rule 8.104(a)(1)(C).[8]

B.    *The Trial Court Did Not Err by Authorizing Service by Publication*

Appellants contend they were improperly served by publication because ACMC failed to attempt personal service with reasonable diligence, and because publication was in a Long Beach newspaper.[9]

---

[8]    Although neither party raised California Rules of Court, rule 8.108(e), the appeal is also timely under that rule, which governs the time to appeal when a "valid motion to reconsider an appealable order" is filed. Appellants moved for reconsideration on April 12, 2022 and the court denied their motions on June 21. Appellants' notices of appeal were filed 16 days later on July 7, well within all applicable deadlines provided by rule 8.108(e).

[9]    The trial court's publication order did not include language required by section 415.50, subdivision (b), "direct[ing] that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained before expiration of the time prescribed for

14

1.      *Legal Background and Standard of Review*

"Section 415.10 et seq. governs the manner of service of a summons.  A summons may be served by various methods.  If service of a summons by other means proves impossible, service may be effected by publication, upon the trial court's approval. [Citation.]  Section 415.50 governs this method of service." (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 880 (*Rios*).) Section 415.50, subdivision (a), provides for service by publication "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner." Subdivision (b) mandates that "[t]he court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served."  (§ 415.50, subd. (b).)

We review for substantial evidence the trial court's determination that ACMC exercised reasonable diligence and that the Grunion Gazette was the newspaper most likely to give notice.  (See *Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 248-249; accord, *Rios*, *supra*, 65 Cal.App.5th at pp. 880-881.)

---

publication of the summons."  Appellants did not challenge this omission in the trial court or on appeal, forfeiting any objection. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 ["a person who fails to preserve a claim forfeits that claim"]; see also *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554-555 [review on appeal ""is limited to issues which have been adequately raised""].)

15

2. *ACMC Exercised Reasonable Diligence*

Substantial evidence supports the trial court's ruling that ACMC demonstrated reasonable diligence in attempting methods of service other than publication. "'The term "reasonable diligence" . . . denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney.'" (*Watts v. Crawford* (1995) 10 Cal.4th 743, 749, fn. 5.) "A number of honest attempts to learn the defendant's whereabouts through inquiry and investigation generally are sufficient. . . . The question is whether the plaintiff took the steps a reasonable person who truly desired to give notice of the action would have taken under the circumstances." (*Rios*, *supra*, 65 Cal.App.5th at p. 880.) The detailed declarations ACMC filed demonstrated it attempted to serve Appellants at Energy Trading's principal place of business but did not succeed.

Substantial evidence also supports ACMC's reasonable diligence in attempting to obtain additional addresses for Appellants. ACMC hired two different private investigation firms, both of which conducted "extensive background searches" across "several database[s]," including "public records," "social media resources," and "privileged sources not available to the public." Once all potential addresses associated with Appellants were ascertained, the investigators "personally visited" these five addresses in an attempt to effect personal service. These efforts were sufficient to show reasonable diligence. (See *Rios*, *supra,* 65 Cal.App.5th at pp. 876, 881 [reasonable diligence established where plaintiff hired two differed private investigators "to locate and serve" the defendant "and they made numerous attempts to effectuate service"]; *Giorgio v. Synergy Management Group, LLC*, *supra*, 231 Cal.App.4th at pp. 248-249 [reasonable diligence

16

where plaintiff "conducted a search for any addresses associated with [defendant]" and attempted personal service on that address].)

3. *Substantial Evidence Also Supports the Trial Court's Order Authorizing Service by Publication in a Long Beach Newspaper*

Substantial evidence supported publication in a Long Beach newspaper because it was "most likely to give actual notice" to Appellants. (§ 415.50, subd. (b).) Appellants argue that they have no connection or nexus to Long Beach, so publication in a Los Angeles or Beverly Hills newspaper was most likely to convey actual notice.[10] We are unpersuaded.

In its application for service by publication, ACMC included a declaration attesting that Appellants were "associated with Energy Trading, whose principal place of business is [in] Long Beach." Additionally, the declarations from ACMC's private investigators confirmed that each of the Appellants was associated in public records, private databases, and social media resources with Energy Trading's principal place of business in Long Beach. While the investigation revealed Appellants had previously been associated with addresses in Beverly Hills and Los Angeles, the investigation further confirmed that Appellants were no longer located at those addresses. (See *Giorgio v. Synergy Management Group, LLC, supra,* 231 Cal.App.4th at p. 249 [affirming newspaper was most likely to give actual notice

---

[10] Appellants do not argue that a different Long Beach newspaper other than the Grunion Gazette was more likely to convey actual notice.

17

where plaintiff "had reason to know [defendant] resided at" a Los Angeles address, so "substantial evidence supported . . . election of a newspaper in Los Angeles"].)

Appellants rely on *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, where service by publication was improper because "[n]othing in the affidavit, or in the more detailed facts before the trial court, supported the election of th[e] newspaper" where the summons was published. (*Id.* at p. 43.) There, plaintiffs "repeatedly" acknowledged the defendant "was no longer in Riverside and admitted . . . that she received mail in Pismo Beach," but they served the defendant with publication in a Riverside paper. (*Ibid.*) By contrast, here the affidavits established Appellants' connection with their business's address in Long Beach and supported the choice of a Long Beach publication. Although a major regional newspaper might have been preferable, we cannot say that no substantial evidence supports the trial court's order authorizing service by publication in Long Beach.

4.     *ACMC Was Not Required To Obtain a Second Order Authorizing Service by Publication of the FAC*

Appellants assert ACMC "re-opened the default" by filing the FAC because it contained material changes to the complaint on which the default was purportedly entered. "After a defendant's default has been entered, if '"a complaint is amended in matter of substance as distinguished from mere matter of form, the amendment opens the default, and unless the amended pleading be served on the defaulting defendant, no judgment can properly be entered on the default."'" (*Paterra v. Hansen* (2021)

18

64 Cal.App.5th 507, 529.)  This argument lacks merit for a number of reasons.

First, we agree with ACMC that Appellants forfeited this argument by failing to raise it in the trial court.  (See *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 371, fn. 8 [arguments not raised in the trial court are deemed waived].)  But even if the argument were preserved, contrary to Appellant's steadfast representations, the FAC was filed before the entry of Appellants' default, not after.

Appellants argue they were entitled to personal service of the FAC, citing *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436.  But *Engebretson* merely held that an amended complaint must be served "in the manner provided for service of summons." (*Id.* at p. 443.)  And indeed Appellants were served by publication after the FAC was filed:  in November 2020 and again in February 2021.  Appellants cite no authority that ACMC was required to obtain a second publication order to serve the FAC after the trial court had already determined that service by publication was proper.

What is more, we agree with the trial court that "the complaint and FAC contain the same substantive allegations against [Appellants]," and any error in designating the correct filing date of the complaint on the request for default judgment was not prejudicial.  (See *Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 536-538 [affirming default judgment because incorrect zip code in default packet did not prejudice defendant]; *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 102-103 [declining to set aside default judgment where error in default packet was not prejudicial].)

19

C.  *The Trial Court Properly Denied Appellants' Motions to Vacate the Default and Default Judgment*

The trial court did not abuse its discretion by denying Appellants' motions to set aside the default and default judgment or their subsequent motions for reconsideration.  Appellants specifically challenge denial of relief under sections 473.5 and 473, subdivision (b).

1.  *The Trial Court Did Not Abuse Its Discretion In Denying Appellants' Section 473.5 Motion*

a.  Legal background and standard of review

Section 473.5, subdivision (a), provides:  "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."  The section 473.5 motion must "be accompanied by an affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect."  (*Id.*, subd. (b).)  The moving party bears the "burden of showing that [its] lack of actual notice was not caused by . . . avoidance of service or inexcusable neglect."  (*Rios, supra,* 65 Cal.App.5th at p. 885.)

We review the trial court's ruling on a section 473.5 motion for abuse of discretion.  (See *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 907; accord, *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 861.)

20

b. Appellants failed to meet their burden under section 473.5

The trial court denied Appellants' section 473.5 motion because Appellants "filed no . . . declaration" asserting their "'lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect.'" Appellants appear to read this statement to mean that the trial court did not review their declarations, but the more reasonable reading is that the trial court determined that Appellants filed no declarations meeting the statutory standard.

And indeed the declarations do not meet Appellants' burden of demonstrating facts supporting their contention that any "'lack of actual notice in time to defend the action was not caused by [their] avoidance of service or inexcusable neglect.'" Appellants filed separate identical declarations: "I have been a resident in the City of Los Angeles for over five (5) years and have never been a resident in the City of Long Beach. [¶] I do not live with Jack Saryan [a.k.a. Jack Khachatryan] and was unaware of this action. [¶] There were no communications ever made to me that there were any attempts to serve me in this action. [¶] Upon receiving a notification that Plaintiff moved for default judgment, I promptly retained counsel."

As Appellants' counsel conceded at oral argument, these declarations failed to state any supporting facts about when and how Appellants learned about the case or how diligently Appellants responded to this knowledge. Appellants argue that reciting the statutory language is all that is required to obtain relief, but the case law is clear that "conclusory" declarations without supporting facts cannot support relief. (See *Rios, supra,* 65 Cal.App.5th at pp. 885-886 [affirming denial of § 473.5 motion

21

where movant's "conclusory declaration does not satisfy his burden" without stating "any supporting facts"]; *Sakaguchi v. Sakaguchi, supra,* 173 Cal.App.4th at pp. 861-862 [affirming denial of § 473.5 motion where affidavit did not "show that any lack of knowledge was caused by excusable neglect"]; *Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1319 ["declaration of counsel failed to show that any inferred lack of notice was not caused by defendants' avoidance or inexcusable neglect. . . . Absent a proper affidavit or declaration that the defendants' lack of actual notice was not caused by inexcusable neglect or avoidance of service, the trial court properly denied the defendants' motion"].)

Further, the declarations were deficient given the evidence before the trial court that Appellants had actual notice of the lawsuit in time to defend. ACMC introduced communications suggesting Appellants were seeking counsel for the case in January 2021, two months before default was entered, nine months before entry of the default judgment, and 14 months before they filed to set aside the default in March 2022. (See *Ellard v. Conway* (2001) 94 Cal.App.4th 540, 548 [§ 473.5 motion properly denied where movants had communicated with an attorney about the case before default was entered against them, because they possessed "actual notice of the action in time to defend" and "their failure to answer was a result of inexcusable neglect"]; accord, *Rios, supra,* 65 Cal.App.5th at p. 885 [affirming denial of § 473.5 relief where movant communicated with opposing counsel about litigation, showing his actual notice "in time to file an answer or other response to the complaint and avoid the entry of a default"].)

Appellants' declarations provided no facts that rebutted evidence before the trial court that Appellants avoided service.

22

(See *Rios*, *supra*, 65 Cal.App.5th at p. 885 [affirming denial of § 473.5 motion where movant's "declaration did not state any supporting facts" showing "his lack of actual notice was not caused by his avoidance of service" and movant "did not reference evidence that he avoided attempts to serve him"].) There was evidence that each of the Appellants had vacated their last known personal and business addresses at the time of the lawsuit, leading two separate private investigators to conclude Appellants were "intentionally hiding their whereabouts." (See *Tunis v. Barrow* (1986) 184 Cal.App.3d 1069, 1079 [movant who moved out of state showed lack of actual notice was not caused by avoidance of service because he "did not conceal his whereabouts"].) And there was evidence, noted by the trial court, that Jack Khachatryan withheld their current addresses from ACMC.

> 2. *The Trial Court Properly Denied Appellants Relief Under Section 473(b)*

Section 473, subdivision (b), provides for relief from a default judgment due to "mistake, inadvertence, surprise, or excusable neglect." The statute "'mandates relief from a judgment of dismissal or default when the motion is based on an attorney's affidavit of fault . . . . In all other cases, relief is discretionary.'" (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25-26.) The trial court denied Appellants relief under section 473, subdivision (b), because Appellants' counsel's declaration "sa[id] absolutely nothing about neglect, and therefore cannot support relief." The trial court did not err. To warrant relief, counsel's affidavit must include an "admission by counsel for the moving party that his error resulted in the entry

23

of a default." (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 609; accord, *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.)  Here, counsel's declaration did not mention any error at all.

   3.   *The Trial Court Did Not Err By Denying Appellants' Motions for Reconsideration*

Appellants also challenge the trial court's denial of their motions to reconsider its order denying relief from the default judgment.  The trial court did not err by denying Appellants' motions for reconsideration.[11]

Section 1008 "governs reconsideration of court orders" and provides, as relevant here:  "[A]ny party affected by [an] order may, . . . based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order,

---

[11]   The trial court denied the motions because it believed it had "no jurisdiction to reconsider its prior ruling in light of the fact that judgment has already been entered."  But courts have entertained motions for reconsideration of an order denying relief under section 473.5, where a default judgment has been entered. (See, e.g., *Rios, supra*, 65 Cal.App.5th at p. 879; *Tunis v. Barrow, supra*, 184 Cal.App.3d at p. 1075; see also *Northridge Financial Corp. v. Hamblin* (1975) 48 Cal.App.3d 819, 825 ["'The motion to reconsider has also been recognized by the reviewing courts where it is in the nature of a motion seeking relief under the provisions of Code of Civil Procedure section 473.'"].)  Although the trial court denied reconsideration on incorrect grounds, we affirm its denial on different grounds.  (See *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6 ["A decision correct in law '"will not be disturbed on appeal merely because given for a wrong reason."'"].)

to reconsider the matter."  (§ 1008, subd. (a).)  If the movant asserts "'new or different facts,'" they "must provide a satisfactory explanation for failing to present the evidence sooner." (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 46, fn. 15; accord, *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690.)  We review for abuse of discretion. (*Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.)

Appellants' opening brief does not address how they met the section 1008 standard.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["mere assertion that the judgment is wrong," "without pertinent argument or an attempt to apply the law to the circumstances of th[e] case," waives the issue]; accord, *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808.)  Even if we reached the issue, Appellants did not meet their burden to show "new or different facts [or] circumstances" supporting reconsideration.  (§ 1008, subd. (a).)  The trial court observed that Appellants' motions for reconsideration "are premised largely on the same arguments made in connection with their motions to vacate default and default judgment."

Appellants' "new or different facts"—supplied by revised declarations from Appellants and a new declaration from Paul Fine—also did not support reconsidering the denial of section 473.5 relief.  Although Fine's declaration stated that Fine "never spoke with Gianni Saryan, Sona Apikian and Sam Khachatryan" about the matter, his declaration also suggested Appellants were seeking representation in January 2021, 14 months before the default judgment was entered.  Appellants updated their individual declarations to state that their "lack of notice was not caused by [their] inexcusable neglect or deliberate

avoidance of service," but Appellants did not provide any facts supporting these bare recitations of the statutory language. Nor did they address the evidence before the trial court, which ACMC had put into its opposition briefs, that they had avoided service and delayed responding to the complaint until the default judgment was entered. (See *Rios*, *supra*, 65 Cal.App.5th at p. 885 [affirming denial of § 473.5 relief where movant "did not state any supporting facts" or "reference evidence that he avoided attempts to serve him"]; *Anastos v. Lee*, *supra*, 118 Cal.App.4th at p. 1319 [§ 473.5 movant who may have provided plaintiff with an "incorrect" address failed to declare how his lack of notice was "not caused by [his] avoidance or inexcusable neglect"]; *Trujillo v. Trujillo* (1945) 71 Cal.App.2d 257, 259-260 [court properly denied motion to set aside default where evidence showed "defendant attempted to avoid service of process," despite defendant's affidavit denying this account].)

Similarly, the new declaration from Appellants' attorney did not warrant reconsideration of the court's denial of relief under section 473, subdivision (b). Appellants assert the trial court did not properly consider their attorney's "declaration under section 473(b), explaining that any deficiencies in the earlier declarations were the fault of counsel and should not result in prejudice to [Appellants]." Counsel declared, "I presumed [Appellants'] 473.5 affidavit was adequate based on context rather than the exact language," and "any confusion caused by [Appellants'] motion or reply—such as identifying Section 473(b) rather than 473.5" was caused by his excusable neglect or mistake. But "[a] mistake based on (1) ignorance of the law or (2) imprecision in drafting . . . is not a proper basis for reconsideration." (*Pazderka v. Caballeros Dimas Alang, Inc.*

26

(1998) 62 Cal.App.4th 658, 670.)  In any event, an attorney's "'[c]onduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument,'" is not excusable neglect or mistake within the meaning of section 473, subdivision (b).  (*Zamora v. Clayborn Contracting Group* (2002) 28 Cal.4th 249, 258; accord, *Garcia v. Hejmadi, supra*, 58 Cal.App.4th at p. 682.)

## DISPOSITION

The trial court's order denying Appellants' motions to set aside the default and default judgment is affirmed.  The order denying Appellants' motions for reconsideration is also affirmed. ACMC is entitled to recover its costs on appeal.

MARTINEZ, J.

We concur:

SEGAL, Acting P. J.                    RAPHAEL, J. [*]

---

[*]      Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.